DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

| | |
|---|---|
| ROBERT M. SELLS | ) |
| | ) D.C. Crim. App. No.2006-52 |
| *Appellant,* | ) |
| | ) Super. Ct. Crim. No. F423-2005 |
| v. | ) |
| | ) |
| PEOPLE OF THE VIRGIN ISLANDS | ) |
| | ) |
| *Appellee.* | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands,
the Honorable Brenda J. Hollar presiding.

**Considered: June 19, 2009**
**Filed: [        ]**

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the
Virgin Islands; and **DARRYL DONOHUE**, Judge of the Superior Court,
Division of St. Croix, sitting by designation.

ATTORNEYS:

**Treston E. Moore, Esq.**
St. Thomas, U.S.V.I.
        *For the Appellant.*

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.
        *For the Appellee.*

**MEMORANDUM OPINION**

**PER CURIAM,**

Robert M. Sells ("Sells") appeals his convictions in the Superior Court[1] of the Virgin Islands for aggravated assault and battery and for intimidation. For the reasons stated below, the Court will affirm the convictions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Sells and Esther Frett ("Frett") each owned businesses in Meada's Plaza (the "Plaza"), a shopping complex located on St. John, U.S. Virgin Islands. In March of 2003, Frett's store occupied premises on the second floor of the Plaza. Sells' store occupied space on the first floor, just below Frett's store.

Sells and Frett argued over parking, Sells' potted plants, and customer access to the shops. Sells, who is white, often called Frett, who is black, racial epithets and made racial slurs.

Frett's lease at Meada's Plaza ended. She held a tent sale in the parking lot of the Plaza on June 3, 2005 to liquidate her inventory. On that day, Sells walked through the tent to access a back area of the Plaza, and threw or knocked some of Frett's

---

[1]   Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

inventory to the ground. On his way back through the tent, Sells bumped into Frett, who lost her balance but did not fall. When Frett confronted him, Sells shoved her away from him and called her racial slurs. Again, Frett did not fall. Sells was arrested.

The People of the Virgin Islands (the "People") charged Sells in an amended information with four counts. Count I charged Sells with intimidation - aggravated assault and battery, in violation of V.I. CODE ANN. tit 14, §§ 707(a), 298(5). Count II charged intimidation - disturbing the peace, in violation of V.I. CODE ANN. tit. 14, §§ 707(a), 622(1). Count III charged aggravated assault and battery, in violation of V.I. CODE ANN. tit. 14, § 298(5). Count IV charged disturbing the peace, in violation of V.I. CODE ANN. tit. 14, § 622(1).

Sells waived his right to a jury trial. At a bench trial on June 19 and 20, 2009, the Court heard testimony from 11 witnesses for the People. After presentation of the People's evidence, Sells made a motion for a judgment of acquittal. The Court denied the motion with respect to counts I and III, but took counts II and IV under advisement. The defense then presented four witnesses. After the close of evidence, the Court found Sells guilty of counts I and III and not guilty with respect to counts II and IV.

The matter came on for sentencing on August 22, 2006. Sells was sentenced to two years incarceration on count I, all suspended except for four months. On count III he was sentenced to one year, all suspended except for four months. The Court also ordered the conviction on count III merged with count I. Sells was further placed on three years of supervised probation.

Sells makes three arguments for review by this Court. He argues that: (1) there was insufficient evidence to support the assault conviction upon which the intimidation conviction also rested, and that as such the trial court erred by denying the motion for judgment of acquittal,[2] (2) the intimidation statute is unconstitutional, and (3) the trial court erred by admitting Sells' prior statements under Federal Rule of Evidence 404(b).

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review judgments and orders of the Superior Court in criminal cases. *See* Revised Organic Act § 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (2004).

### B. Standard of Review

#### 1. Sufficiency of the Evidence

---

[2] Sells' brief argues that the intimidation statute requires proof of a mens rea element separate from the mens rea required to prove assault. Despite the structure of the brief, which presents this as a separate argument, it boils down to the contention that there was insufficient evidence supporting a mens rea finding for intimidation.

An appellate court exercises plenary review over sufficiency
of the evidence claims. *United States v. Miller*, 527 F.3d 54, 60
(3d Cir. 2008). "'In exercising that review, we must interpret
the evidence in the light most favorable to the government as the
verdict winner,' [citation] and 'do not weigh evidence or
determine the credibility of witnesses in making [our]
determination.'" *Id.* (second alteration in original) (quoting
*United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998);
*United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)).
That is, the verdict must stand if "*any* rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt[.]" *United States v. Voigt*, 89 F.3d 1050, 1080
(3d Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319
(1979) (emphasis in original)). Overall, "a claim of
insufficiency of the evidence places a very heavy burden on an
appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d
Cir. 1990) (internal quotation marks and citation omitted).

## 2. Constitutionality of the Intimidation Statute

"We review *de novo* questions of law, issues implicating
rights protected under the U.S. Constitution, and the
interpretation of statute[s]." *Garcia v. Gov't of the Virgin
Islands*, 48 V.I. 530, 534 (D.V.I. App. Div. 2006) (citing *Gov't
of the Virgin Islands v. Albert*, 89 F. Supp. 2d 658, 663 (D.V.I.

App. Div. 2001)); *see also United States v. Singletary*, 268 F.3d 196, 198 (3d Cir. 2001).

### 3. Admission of 404(b) Evidence

"To the extent that our review of the [trial] court's Rule 404(b) ruling requires [a reviewing court] to interpret the rules of evidence our review is plenary, but, if the evidence could have been admissible in some circumstances, we would review the [trial] court's decision to admit evidence of prior 'bad acts' under Rule 404(b) for an abuse of discretion." *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006) (citing *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003)). "An abuse of discretion arises only when the decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)(quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

### III. ANALYSIS

### A. Sufficiency of the Evidence

Sells argues that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to prove assault and battery. He correctly points out that without an assault and battery conviction, there could be no intimidation conviction.

The statutory definition of assault and battery is,
"[whoever uses any unlawful violence upon the person of another
with intent to injure him, whatever be the means or the degree of
violence used, commits an assault and battery." V.I. CODE ANN.
tit. 14, § 292. The elements of assault and battery are: 1)
that the perpetrator used violence against the victim, 2) that
the act or acts were done with the intent to inflict injury, and
3) that the violence was unlawful.[3] *Brown v. Gillard*, No.
1999/148, 2003 U.S. Dist. LEXIS 3153, at *8 (D.V.I. App. Div.
Jan. 21, 2003) (unpublished) (citing *Gov't of the Virgin Islands
v. Frett*, 14 V.I. 315, 325 (Terr. Ct. 1978)).

Sells argues that there was insufficient proof that the
contact that took place was "unlawful violence". Frett testified
that she was looking down, making change for a customer, when she
"felt a push. A hard body slam on my left side that sent me
staggering." (J.A. 348.) Frett also said, "I felt a hard hit.
Somebody like hit me like this. Because I went staggering back
towards the road. When I looked up, Mr. Sells was in front of
me." (*Id.* at 349.) Frett also testified that her immediate
reaction to the contact was to say "you hit me" to Sells two or

---

[3] Sells was charged with aggravated assault and battery, which is
defined as assault and battery where the person who commits the crime is an
adult male, and the victim is a woman or child. V.I. CODE ANN. tit. 14, §
298(5). As such, the People also had to prove that 1) Sells was an adult male
and, 2) Frett was a woman. Sells does not argue that the People failed to
prove these two elements.

three times. (*Id.* at 350.) Frett testified that after she accused Sells of hitting her, she confronted him from about a foot away. She testified that Sells then pushed her in the chest with both of his hands. (*Id.* 351.) There was enough evidence that Sells used unlawful violence on Frett that a rational trier of fact could have found that element existed beyond a reasonable doubt.

Sells further argues that there was insufficient proof that he had the specific intent to injure Frett. As in many cases, there was no direct evidence that Sells sought to injure Frett.

*Government of the Virgin Islands v. Frett* prescribes a framework for establishing the element of intent to injure in Virgin Islands assault cases.

> Ordinarily intent is a question of fact. [citation] It may be inferred from the facts and circumstances surrounding the act, the situation of the parties, the nature and extent of the violence, the acts and declarations of the parties at the time, and the objects to be accomplished. [citation] In case of extreme circumstances, where the force applied is clearly excessive or so cruel as to be shocking to every right thinking man, an intent to injure will be inferred as a matter of law[.]

14 V.I. 315, 324-325 (Terr. Ct. 1978) (citations and quotation marks omitted). *Frett* indicates some data points that a court might consider in making a factual determination based on the totality of the circumstances.

Frett testified that Sells shoved her with two hands to her chest. That act shows intentional conduct. With regard to the violence of the contact, the evidence showed that Sells bumped Frett with some force, and then shoved her later. Frett's description of the contact, *supra*, describes contact that contained enough force to send her staggering. Frett also clarified, "[w]e didn't bump shoulders. He hit me." (*Id.* at 389.) Frett said that the contact left her feeling shaken.

It is not unlikely that shoving a person will result in injury. *See, e.g., Witherspoon v. Univ. of Indianapolis*, 1:06-cv-1423, 2008 U.S. Dist. LEXIS 30254, at *3 (S.D. Ind. April 9, 2008) (man shoved his girlfriend onto a couch, injuring her head and ribs); *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92, 93 (3d Cir. 1996) (café patron injured when employees shoved other patrons into him). Further, "a person is presumed to have intended the natural consequences of his acts." *United States v. Newman*, 490 F.2d 139, 148 (3d Cir. 1974) (reproducing jury instructions). There was more than sufficient evidence showing that Sells intentionally bumped and later shoved Frett. Both impacts were hard enough that Frett staggered. A rational trier of fact could have found that the evidence proved beyond a reasonable doubt that Sells intended to injure Frett. As such, it was not error for the trial court to find the People

had proved the element of intent to injure.

Undeterred, Sells argues that the trial court erred because there was insufficient evidence that Sells assaulted Frett by reason of her race. However, there was a substantial amount of evidence pointing to Sells abusing Frett on account of and about race for a period of two years.

Melvin James, a taxi driver who often bought breakfast from Frett, testified. He said that in April 2005 as he was waiting for his food, Sells came out of his shop and told Frett not to touch his potted plant and called her a nigger.

Dennis Richardson ("Richardson"), who worked near the Plaza, also testified. Richardson said that on June 3, 2005, he observed Sells getting out of his car, grumbling, and then walking through the tent area Frett had set up. Richardson saw Sells swat at some clothing that was hanging for sale. Richardson heard Sells say "[t]his god damn bitch why she don't get this bitch out of here, black bitch." (J.A. 242.)

Marva Anthony ("Anthony"), who worked for Frett at her store, also testified. Anthony said that in February 2005, Sells accused Frett, saying "you broke my f---ing plant." (J.A. 267.) Frett denied breaking his plant. Sells insisted that she did, calling her a b----. Sells then mooned Frett and Anthony, pulling down his pants and showing them his backside, and said

"kiss my white ass." (Id.) On another occasion Anthony heard Sells say to Frett, "you have another n----- working for you to help you make money." (Id. at 268.)

Moreover, there was evidence that Sells was spewing racial vitriol on the day he assaulted Frett. Police officer Claudius Hippolyte ("Hippolyte") testified that when he was transporting Sells to a jail cell, just after he was arrested for assaulting Frett, the defendant repeated several times, "are you really going to believe what that black witch said." (J.A. 292.) He also testified that Sells said "we were all the same color . . . . That we all, the cops me and Officer Christopher is the same color as Ms. Frett." (Id. at 296.)

In addition, Frett testified that just after Sells bumped her and then shoved her he called her a b----, and he said "'when you look in the mirror, what you see a black witch?'" (J.A. 353.) The evidence of ongoing racial animus as well as Sells' race-based comments just after shoving Frett were sufficient for a rational trier of fact to find beyond a reasonable doubt that the assault was prompted by race.

As such, the trial court did not err in denying the motion for judgment of acquittal.

## B. Constitutionality of the Intimidation Statute

Sells argues that the intimidation statue is

unconstitutional on its face.[4]  The intimidation statute

provides, in relevant part: "Whoever, by reason of the actual or

perceived race, . . . violates sections . . . 298 . . . of this

title shall be guilty of a felony." V.I. CODE ANN. tit. 14,

707(a).  Sells' facial challenge argues that the phrase "by

reason of" is so vague as to inadequately warn the public of

proscribed conduct.

A statute is not unconstitutionally vague so long as the

statutory words "'provide explicit standards for those who apply

them' and 'give the person of ordinary intelligence a reasonable

opportunity to know what is prohibited.'" *McConnell v. Federal

Election Com'n*, 540 U.S. 93, 170 (quoting *Grayned v. City of

Rockford*, 408 U.S. 104, 108-109 (1972)).  Further, a statute "may

be impermissibly vague because it fails to establish standards

for the police and public that are sufficient to guard against

the arbitrary deprivation of liberty interests." *City of Chicago

v. Morales*,  527 U.S. 41, 52 (1999) (citing *Kolender v. Lawson*,

461 U.S. 352, 358 (1983)).

We conclude that the language "by reason of" clearly

prohibits criminal conduct when the victim is victimized because

of, or on account of, her race.  The phrase "by reason of" means

---

[4] Sells' brief also alleges that the statute is also unconstitutional as applied to him under these circumstances. However, other than using the phrase "as applied" in a heading, Sells does not actually argue that the statute is unconstitutional as applied.

that race is a motivating factor. In fact, the term "by reason

of" appears several times in the United States Code to mean just

that. *See, e.g.*, Food Stamp Act of 1964, 7 U.S.C. § 2020(c) ("In

the certification of applicant households for the supplemental

nutrition assistance program, there shall be no discrimination *by

reason of* race, sex, religious creed, national origin, or

political affiliation." (emphasis added)).

The United States Court of Appeals for the Ninth Circuit has

analyzed a similarly-worded statute to determine whether it was

void for vagueness in *United States v. Makowski*, 120 F.3d 1078

(9th Cir. 1997). That statute provides:

> Whoever, whether or not acting under color of law, by
> force or threat of force willfully injures, intimidates
> or interferes with, or attempts to injure, intimidate
> or interfere with -
> (2) *any person because of his race,* color, religion or
> national origin and because he is or has been -
> (B) participating in or enjoying any benefit, service,
> privilege, program, facility or activity provided or
> administered by any State or subdivision thereof . . .
> .

18 U.S.C. § 245(b) (emphasis added).

The Ninth Circuit found that:

> The language of § 245(b)(2)(B) leaves little doubt that
> a defendant will be convicted under § 245(b)(2)(B) only
> where he has the specific intent to interfere with a
> victim's enjoyment of a federally protected right on
> the basis of the victim's race. . . . Persons of
> "common intelligence" would comprehend that the statute
> prohibits the assault of an individual where the
> violence is motivated by racial animus and prevents the
> victim from enjoying a federally protected right. . . .

> Racial animus must be a motivating factor in the use or
> threat of force. . . . Any vagueness that might
> otherwise exist in § 245(b)(2)(B) is eliminated by the
> "willful" scienter requirement.

*Makowski*, 120 F.3d at 1081.

The Ninth Circuit relied upon the idea that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.* (quoting *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

Here, the intimidation statute makes clear that any of the underlying crimes, such as assault and battery, which are motivated by a person's race, will be elevated to a felony. It creates a scienter requirement that the crime be motivated by race. The statute proscribes conduct clearly and in a manner that persons of common intelligence would understand. In sum, the statute is not unconstitutionally vague.

Sells also argues that the statute is constitutionally void because it punishes speech, in violation of the first amendment. The statute itself says nothing about any form of speech or expressive conduct. It merely enhances a crime to a felony if committed by reason of, for example, race.

Faced with the challenge of a defendant convicted of race-based assault, the United States Supreme Court has analyzed a similar Wisconsin statute and found that it does not infringe on

the rights protected by the first amendment. *Wisconsin v.
Mitchell*, 508 U.S. 476 (1993). The statute at issue in that case
provides, in pertinent part, that the maximum penalty is enhanced
when a defendant "[i]ntentionally selects the person against whom
the crime . . . is committed or selects the property which is
damaged or otherwise affected by the crime . . . because of the
race, religion, color, disability, sexual orientation, national
origin or ancestry of that person . . . ." Wis. Stat. §
939.645(1)(b).

The Court noted, first, that "a physical assault is not by
any stretch of the imagination expressive conduct protected by
the First Amendment." *Id.* at 484 (citing *Roberts v. United States
Jaycees*, 468 U.S 609, 628 (1984)). The Court discussed the fact
that the statue at issue enhanced punishment based on the
motivating factor behind the crime. Confirming that abstract
beliefs cannot be taken into account in sentencing, the Court
nonetheless noted that, "'the Constitution does not erect a per
se barrier to the admission of evidence concerning one's beliefs
and associations at sentencing simply because those beliefs and
associations are protected by the First Amendment.'" *Id.* at 486
(quoting *Dawson v. Delaware*, 503 U.S. 159, 165 (1992)). At
bottom, the Court found that, "[t]he State's desire to redress
these perceived harms [of bias-based conduct] provides an

adequate explanation for its penalty-enhancement provision over and above mere disagreement with offenders' beliefs or biases." *Id.* at 488.

This Court finds *Mitchell* to be directly on point, and its reasoning persuasive in this case. The legislature of the Virgin Islands has chosen to enhance punishment for some crimes when they are motivated by race, or other protected classifications. Sells had every right to think and say what he wanted. However, the legislature did not overstep its constitutional bounds by proscribing conduct motivated by his bias. The statute is constitutional.

## C. Admission of 404(b) Evidence

Sells argues that the trial court erred by admitting some of his prior statements concerning race under Federal Rule of Evidence 404(b). He first argues that the government failed to comply with the notice requirement of 404(b). The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b). The Rule 404(b) "pretrial notice

requirement in criminal cases . . . is intended to reduce

surprise and promote early resolution on the issue of

admissibility." Fed. R. Evid. 404 advisory committee's note.

In this case, the People attached an affidavit to the

Information on October 14, 2005, that described witness

statements recounting every bad act about which the People

elicited testimony at trial. The affidavit, by Kenneth A.

Schulterbrandt, of the Virgin Islands Department of Justice,

related instances in which Sells had called various black people

n-----. It also described witness accounts of other racist

statements he had made. The witnesses were not identified by

name, but Sells concedes that the Rule does not require

disclosure of witness identity. As such, Sells had notice of

every piece of 404(b) evidence that was admitted at trial.[5]

Sells further argues that the evidence submitted did not

qualify under Rule 404(b) because it did not prove any of the

factors listed in the rule. The United States Supreme Court has

explained that the primary inquiry a trial court must make is

whether admission of evidence of bad acts is sought for a "proper

purpose". *Huddleston v. United States*, 485 U.S. 681, 688 (1988)

---

[5] In fact, when the People attempted to introduce 404(b) evidence
through the testimony of Francis Phillip, whose statement had not been
included in the affidavit, the Court warned counsel not to ask him about any
prior bad acts. (J.A. 276-78.)

("If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.").

The People elicited testimony of Sells' years of race-based hostility to Frett to show that he acted on a race-based motive in carrying out the assault. Rule 404(b) articulates particular uses a party can make of evidence of prior bad acts, and proving motive is one use explicitly contemplated by the rule. Fed. R. Evid. 404(b). The evidence was used to prove motive, and served a proper purpose.

Sells also argues the evidence was not relevant. It is clear that prior bad acts are not necessarily relevant to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992). "Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." *Id.*

In this case, as Sells points out, the intimidation statute requires proof of the distinct element that the crime was perpetrated by reason of the victim's race. Testimony regarding Sells' racial animus was admitted to show that he exhibited

racial hate for at least two years. Statements admitted from just before and just after the assault were particularly relevant, circumstantial evidence of the racial motivation behind Sells' assault on Frett. The evidence was highly relevant to proving the intimidation mens rea element.

Sells further argues that the evidence of his previous use of racial slurs failed the Rule 403 balancing test. Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Sells argues under this rule, again, that the evidence was irrelevant.

With regard to the Rule 403 determination, "it is . . . advisable for the trial court to place on the record a clear explanation of the basis for its ruling on the admission of the evidence." *United States v. Murray*, 103 F.3d 310, 316 (3d Cir. 1997). In this case, at a pretrial hearing, the trial court articulated its reason for admitting the evidence. The court pointed out that the enhancement for racial motive behind the crime relied on proof of the element of that motive. The court found that the People had to prove Sells' racial motivation at

the time of the assault. As such, the People would need to introduce circumstantial evidence of Sells' state of mind. Without showing some external manifestation of Sells' racial bias, the People could not hope to provide proof of that element. Thereafter, the People used the 404(b) evidence to show that it was more likely than not that Sells' assault was on account of Frett's race. *See Sampson*, 980 F.2d at 888. Accordingly, the trial court did not abuse its discretion in admitting evidence of Sells' prior bad acts that showed he harbored racial animus.

## IV.   CONCLUSION

For the reasons stated above, the Court will affirm Sells' convictions. An appropriate order accompanies this opinion.